UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
CHRISTOPHER WEBB,                            :
                                             :          MEMORANDUM & ORDER
                            Petitioner,      :
                                             :          07-CV-2655 (ENV)
        -against-                            :
                                             :
JAMES J. WALSH, Superintendent,              :
Sullivan Correctional Facility,              :
                                             :
                            Respondent.      :
-------------------------------------------------------------- x

**VITALIANO, D.J.**

Petitioner Christopher Webb is before the Court on his petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Webb's writ is denied and

the petition is dismissed.

**BACKGROUND**

On June 3, 1999, petitioner visited the apartment of Stephanie St. Rose and her mother,

Cynthia St. Rose. As he was leaving the apartment, petitioner turned around and pushed his way

back into the apartment, accompanied by two unidentified men. A struggle between Stephanie

and the two unidentified men ensued. Hearing the commotion, Cynthia ran out of her room into

the vestibule to help her daughter. A gun was drawn and a number of shots were fired into the

small vestibule form a distance of four or five feet away. Multiple shots hit both Stephanie and

Cynthia. Two of the men then ran out of the apartment. As the last man was leaving, he stopped

over Stephanie, who was in the late stages of pregnancy, and fired again. When the paramedics

arrived, Cynthia was dead; Stephanie, seriously wounded, survived.

At trial, Stephanie identified Webb as the man who had fired all of the shots. Detective

Mahon, who interviewed petitioner on June 24, 1999, testified that Webb had told him he had

planned a burglary of Stephanie St. Rose's apartment. He requested the two men to come to the apartment to scare Stephanie so that she would stop attempting to contact his cousin who, according to Stephanie, had gotten her pregnant and then stopped returning her calls.

Webb was convicted by a jury of depraved indifference murder in the second degree, under New York Penal Law § 125.25(2), for killing Cynthia St. Rose, and of attempted intentional murder in the course of and in furtherance of burglary, under New York Penal Law §§ 110.10/125.27(1)(a)(vii), resulting from the wounding of Stephanie St. Rose. Petitioner was also convicted of criminal possession of a weapon in the second degree for possession of the gun that he used to shoot the two women. The trial court sentenced Webb to three consecutive sentences—25 years to life on the murder count, 25 years to life on the attempted murder count, and 15 years on the weapon possession count.

On direct appeal, the Appellate Division found petitioner's claims without merit and, on July 25, 2006, affirmed the convictions and the sentences. See People v. Webb, 31 A.D.3d 796, 818 N.Y.S.2d 621 (2d Dep't 2006). Petitioner, through counsel, then applied for leave to appeal to the Court of Appeals; leave was denied on December 8, 2006. See People v. Webb, 7 N.Y.3d 929, 827 N.Y.S.2d 698, 860 N.E.2d 1000 (2006). Petitioner timely filed the instant petition for habeas corpus on June 29, 2007, claiming that (1) the evidence was legally insufficient to support a conviction for attempted murder in the first degree; (2) the evidence was legally insufficient to support a conviction for depraved indifference murder in the second degree; (3) he was denied equal protection of the laws by the prosecution's unlawful use of peremptory challenges; and (4) the consecutive sentences imposed by the state court violated his constitutional rights.

**STANDARD OF REVIEW**

2

As is well engrained now, mandated by AEDPA, a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause of §2254 unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court . . . on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., for the Court, Part II). Similarly, a federal court cannot issue the writ under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413. But, a state court's "unreasonable application" of law must have been more than "incorrect or erroneous": it must have been "'objectively unreasonable.'" Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (citing Williams, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)). Lastly, claims that were not adjudicated on the merits in state court are not subject to the deferential standard[1] that applies under AEDPA. See e.g., Cone v. Bell, 129 S.Ct. 1769, 1784 (2009) (citing 28 U.S.C. § 2254(d)).

A. **Sufficiency of Evidence**

In assessing a claim regarding the sufficiency of trial evidence, a habeas court must view all "evidence in the light most favorable to the prosecution," and the applicant is entitled to habeas relief only if "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt'" based on the evidence adduced at trial. Flowers v. Fisher, 296 Fed. App'x 208, 210 (2d Cir. 2008) (citing Jackson v. Virginia, 443 U.S. 307, 324-26 (1979)). Even when "'faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in

---

[1] Under AEDPA's deferential standard of review, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Smith v. Herbert, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)).

favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326). Given that a reviewing court may not substitute its judgment for that of a rational jury, a petitioner "bears a very heavy burden" in challenging the sufficiency of evidence upon which he was convicted. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks and citation omitted).

1. Attempted Murder

Webb claims that the evidence is legally insufficient to convict him of attempted murder in the first degree in the course of and in furtherance of a burglary because the burglary was not "meaningfully independent" of the attempted murder.

Burglary is a trespass elevated to a felony by virtue of its criminal intent. People v. Cahill, 2 N.Y.3d 14, 777 N.Y.S.2d 332, 809 N.E.2d 561 (2003). Under New York Penal Law § 125.27(1)(a)(vii), a conviction for first-degree murder, or its attempt, premised on burglary, requires that the crime a defendant intends to commit on the premises be independent of the (subsequent) murder. See 2 N.Y.3d at 64-65, 71, 777 N.Y.S.2d at 359-60, 365, 809 N.E.3d at 588-89. That is, if the burglar enters the premises intending only murder, that intent cannot be used both to define the burglary and at the same time elevate the second degree murder to a capital crime. Id.[2]

The Appellate Division's determination that there was sufficient evidence for a conviction of attempted first-degree murder premised on burglary was neither contrary to, nor an unreasonable application of, clearly established federal law. Notwithstanding any deference which the findings of the Second Department may deserve, there is ample evidence to support the conclusion even de novo that the crime petitioner intended to commit was independent of the

---

[2] At the time of the alleged crime, as well as at the time Cahill was decided, death was an available penalty for first-degree murder in New York. See People v. LaValle, 3 N.Y.3d 88, 783 N.Y.S.2d 485, 817 N.E.2d 341 (2004) (ruling that the state's

4

attempted murder. Indeed, petitioner made a statement to Detective Mahon, received in evidence, that he had recruited his two accomplices to enter the apartment in order to scare Stephanie into silence and to commit burglary—not to murder anyone. In any event, assuming, of course, Webb was raising a federal claim at all on direct appeal and is, therefore, not now merely seeking federal review of the Appellate Division's adverse exercise of its plenary power under state law to assess the legal sufficiency of the evidence supporting the conviction, the Appellate Division, through its affirmance of the conviction, had to have found that there was sufficient legal evidence before the jury to support a finding beyond a reasonable doubt that petitioner initially intended to commit a burglary (simultaneously satisfying Jackson if a federal claim had been raised). And what better proof in the record of his intent than Webb's own words? Detective Mahon testified that Webb confessed to him that burglary was his plan. Consequently, with respect to this count of conviction, no habeas relief grounded in the constitutional insufficiency of the evidence is warranted, assuming a federal claim was made and exhausted at all.

2. Depraved Indifference Murder

Petitioner advances a similar argument with respect to his conviction for the depraved indifference murder in the second degree of Cynthia St. Rose.[3] As might be surmised, Webb's insufficiency argument focuses on the absence of the requisite mental state.

In New York, a person who "engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" is guilty of murder in the second degree on a theory of depraved indifference murder provided that the conduct was committed

---

death penalty statute was unconstitutional).

[3] Again, it is not clear whether Webb presented only a state legal sufficiency claim to the Appellate Division or intended to raise (and lost) a Jackson claim. If the former, Webb's federal claim as to this count of conviction would be unexhausted too and no relief would be available to him on that score.

"[u]nder circumstances evincing a depraved indifference to human life." N.Y. Penal Law §

125.25(2). "[D]epraved indifference is best understood as an utter disregard for the value of

human life--a willingness to act not because one intends harm, but because one simply doesn't

care whether grievous harm results or not.'" People v. Feingold, 7 N.Y.3d 288, 296, 819

N.Y.S.2d 691, 852 N.E.2d 1163, 1168 (2006) (internal quotation marks and citation omitted).

The Second Department's determination that Webb acted with depraved indifference in

killing Cynthia St. Rose was neither contrary to, nor an unreasonable application of, clearly

established federal law. There was no evidence showing that petitioner intended to kill Cynthia;

in fact, petitioner's own statements indicated that he and his accomplices intended to kill no one

and that the motive for any of their actions was a dispute with Stephanie not Cynthia St. Rose.

But, by firing into the crowded vestibule from a distance of four or five feet away, Webb evinced

an utter disregard for human life. On these facts, a rational juror could find, beyond a reasonable

doubt, that Webb acted with an utter disregard for human life, and the death of Cynthia St. Rose

resulted from it. Plainly, Webb has failed to meet the heavy burden required in challenging the

constitutional sufficiency of the evidence upon which he was convicted. Habeas relief is rejected

on this ground as well.

Collaterally, the Appellate Division's determination that Webb had waived his

substantive right to challenge the sufficiency of the evidence on one theory through the doctrine

of invited error was neither contrary to, nor an unreasonable application of, clearly established

federal law. A defendant who has "invited" a challenged charge "has waived any right to

appellate review." United States v. Giovanelli, 464 F.3d 346, 351 (2d Cir. 2006) (internal

quotation marks omitted); see also United States v. Ferguson, 758 F.2d 843, 852 (2d Cir. 1985)

(observing, in discussing invited error, that when defendants obtain "precisely what they

affirmatively sought, it ill behooves [them] now to complain"); <u>United States v. Young</u>, 745 F.2d 733, 752 (2d Cir. 1984) (holding that "not even the plain error doctrine permits reversal on the ground that the trial court granted a defendant's request to charge"). In this case, petitioner was originally charged with murder in the first degree for the killing of Cynthia St. Rose. Through counsel, he requested the charge of depraved indifference murder instead and specifically acknowledged his waiver of the right to challenge the conviction on this ground. To challenge the propriety of the jury charge as given and related evidentiary sufficiency in these circumstances advances no argument of any merit, constitutional or otherwise.

## B.   Equal Protection and Peremptory Challenges

In the middle of jury selection, defense counsel objected to the prosecutor's abuse of peremptory challenges. At the time of the objection, five out of the available ten peremptory challenges exercised by the People had been used to strike immigrants from Caribbean basin countries, including immigrants from Haiti, Trinidad, Belize, Barbados, and Jamaica. Defense counsel characterized the strikes as a pattern, violative of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), and noted that Webb was of Caribbean origin. The trial court rejected the <u>Batson</u> challenge, refusing to recognize immigrants from these countries as a cognizable collective class, and also refusing to recognize the peremptory challenges of the five individuals as a pattern.

The Appellate Division determined that the claim was without merit. <u>See</u> <u>People v. Webb</u>, 31 A.D.3d 796, 818 N.Y.S.2d 621 (2d Dep't 2006). Petitioner, in retort to the Appellate Division, argues that the prosecutor demonstrated a discriminatory purpose when he used five out of his first ten peremptory strikes against Caribbean members of the venire. He further argues that people of Caribbean origin are a cognizable group under <u>Batson</u>.

To raise a challenge under <u>Batson</u>, a defendant must make a <u>prima facie</u> showing that the

prosecutor has exercised peremptory challenges with a discriminatory purpose on the basis of race or ethnicity. Batson, 476 U.S. at 96-97; see also Hernandez v. New York, 500 U.S. 352 (applying the Batson three-step process for evaluating a claim that a prosecutor has used peremptory challenges in a manner violating the equal protection clause in a case concerning ethnicity). To make this prima facie showing of discrimination, a defendant must establish that the prosecutor has exercised peremptory challenges in order to remove members of the claimed group from the pool. Batson, 476 U.S. at 96-97. A defendant may rely solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial to make this prima facie case. Id. Moreover, a discriminatory purpose can be inferred through a pattern of strikes against prospective jurors of a cognizable group. Id.

The Appellate Division's decision that this claim was meritless was not contrary to, nor an unreasonable application of, Batson or Hernandez because people of Caribbean origin have not been found to constitute a cognizable racial or ethnic group. The Supreme Court, simply, has never held that the polyglot, multi-cultured people of Caribbean origin constitute a single ethnicity for equal protection purposes under Batson,[4] nor has it established a clear formula through which additional ethnicities can be ascertained. See Knowles v. Mirzayance, 129 S.Ct. 1411, 1419 (2009) ("[T]his Court has held on numerous occasions that it is not an unreasonable application of clearly established [f]ederal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (citation omitted); cf. Carey v. Musladin, 549 U.S. 70, 77, 127 S.Ct. 649, 654 (2006) (holding that a lack of Supreme Court holding on a particular issue precluded a finding that the state court unreasonably applied clearly

---

[4] "Batson has been applied by the Supreme Court only to classifications which have heretofore received heightened scrutiny -- race, gender, and ethnic origin thus far limited to Latinos." Rico v. Leftridge-Byrd, 340 F.3d 178, 183 (3d Cir. 2003).

established federal law). As a consequence, adjudged through the filter of AEDPA, Webb's Batson-styled challenge to his convictions is without substance. As a consequence, adjudged through the filter of AEDPA, Webb's <u>Batson</u>-styled challenge to his convictions is without substance.

## C. Consecutive Sentences

Petitioner challenges the trial court's determination to sentence him consecutively for the murder of Cynthia and attempted murder of Stephanie St. Rose and possession of the gun used in both of these crimes. Webb cites <u>People v. Hamilton</u> for the proposition that "to be sentenced consecutively on the weapon charge, it would have been necessary for the People to establish that [the defendant] possessed the pistol with a purpose unrelated to his intent to shoot" the victims. 4 N.Y.3d 654, 658, 797 N.Y.S.2d 408, 409, 830 N.E.2d 306, 307 (2005); <u>see also</u> Memorandum of Law and Request for Hearing for Petitioner at 80-82. It is not a challenge available on federal habeas, for there is no constitutional right to concurrent, rather than consecutive, sentences. <u>United States v. McLean</u>, 287 F.3d 127, 136 (2d Cir. 2002) (citing <u>United States v. White</u>, 240 F.3d 127, 135 (2d Cir. 2001)). As a result, the question of "'whether sentences should be made to run concurrently or consecutively is purely a question of state law.'" <u>Reed v. Cuomo</u>, No. 08-CV-4875, 2010 U.S. Dist. LEXIS 45488, at *9 n.4 (E.D.N.Y. May 7, 2010) (quoting <u>Reyes v. People</u>, No. 08-CV-8645, 2009 U.S. Dist. LEXIS 34030, at *4 (S.D.N.Y. Apr. 21, 2009)); <u>see also</u> <u>Washington v. Goord</u>, No. 07-CV-7150, 2009 U.S. Dist. LEXIS 106066, at *19 (S.D.N.Y. Nov. 13, 2009); <u>Watkins v. Ercole</u>, No. 06-CV-15222, 2008 U.S. Dist. LEXIS 67797, at *67 (S.D.N.Y. Sept. 9, 2008). Moreover, as a general proposition, "'no constitutional issue is presented where a sentence falls within the range [prescribed] by state statutory law.'" <u>Freeman v. Burge</u>, No. 05-CV-1585, 2009 U.S. Dist. LEXIS 45854, at *50

(E.D.N.Y. May 22, 2009) (quoting <u>Chisholm v. Henderson</u>, 736 F. Supp. 444, 449 (E.D.N.Y. 1990)).

To be sure, Webb does not dispute that his sentences were within the ranges prescribed by New York law for each crime of conviction. This Court is, therefore, without power to grant relief, with regard to any of the individual sentences. Furthermore, petitioner's assertion that his overall sentence violated the Supreme Court's holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), falls flat. Since the sentencing court did not make factual findings that resulted in a sentence "'beyond the prescribed statutory maximum'" for each count of conviction, no <u>Apprendi</u> relief is available. See <u>Abaari v. United States</u>, No. 03-CV-4723, 2008 U.S. Dist. LEXIS 2690, at *4 (E.D.N.Y. Jan. 14, 2008) (quoting <u>Apprendi</u>, 530 U.S. at 490). Indeed, in <u>Oregon v. Ice</u>, the Supreme Court clarified that <u>Apprendi</u> does not preclude a sentencing judge from finding facts relevant to the determination of whether to impose consecutive rather than concurrent sentences. 129 S.Ct. 711, 717-19 (2009); <u>see also</u> <u>Garcia v. United States</u>, No. 09-CV-9278, 2009 U.S. Dist. LEXIS 118836, at *10 n.3 (S.D.N.Y. Dec. 21, 2009); <u>Taylor v. Poole</u>, No. 07-CV-6318, 2009 U.S. Dist. LEXIS 76316, at *70-*71 (S.D.N.Y. Aug. 27, 2009). In short, the sentencing court's imposition of consecutive sentences, even if it had been in violation of state criminal procedure law, simply does not present a violation of federal constitutional law on which this Court could grant habeas relief.

## CONCLUSION

In accord with the foregoing, the petition for habeas corpus of Christopher Webb is dismissed and the writ is denied. Since Webb has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this

Memorandum and Order would not be taken in good faith and, therefore, in forma pauperis is

denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45

(1962).

The Clerk is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
July 23, 2010

ERIC N. VITALIANO
United States District Judge